# The People of the State of Illinois, Defendant in Error, Ed. Kirk, Plaintiff in Error.

## Gen. No. 16,424.

DRAM-SHOPS—*statute pertaining to fixing status as anti-saloon territory construed.* If a town has voted that its territory shall be anti-saloon a village located therein is bound thereby, and re-submission cannot take place until the expiration of 18 months, and then only to the voters of the town.

Error to the Criminal Court of Cook County; the HON. RICHARD S. TUTHILL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1910. Affirmed. Opinion filed April 19, 1912.

MAYER, MEYER, AUSTRIAN & PLATT, for plaintiff in error.

JOHN E. W. WAYMAN, for defendant in error; ZACH HOFHEIMER, of counsel.

MR. JUSTICE CLARK delivered the opinion of the court.

The plaintiff in error, Ed. Kirk, hereinafter called the defendant, was indicted in the Criminal Court of Cook county for selling liquor in the village of Summit, which is in the township of Lyons, Cook county, and alleged to be a part of what is known as anti-saloon territory. The law governing the case went into effect July 1, 1907, and is incorporated in Chapter 43 of the Revised Statutes. The case was tried in the Criminal Court upon a stipulation of fact, and the defendant found guilty as charged in the indictment and fined $25.00 and costs. This writ of error is prosecuted to reverse the judgment.

The stipulation of fact is as follows:

" * * * that on the 31st day of October, A. D. 1908, said defendant was the proprietor and keeper of and operating a dram-shop within the limits of a certain political subdivision in a certain township (town) in Cook County, Illinois, to-wit: the township (town) of Lyons.

That on, to-wit: April 7th, A. D. 1908, the township (town) of Lyons held an election, and at said election there was submitted to the voters of said township (town) of Lyons, the question of 'Shall this town become anti-saloon territory,' and that at said election the majority of voters in said town voted 'yes' upon said proposition.

That said election was duly and properly held in manner and form as provided by statute, and that

said question was duly and legally submitted to said voters as provided by law.

That the village of Summit is a duly incorporated village located within said township (town) of Lyons, and that the boundary limits of said village of Summit are not identical with those of said township (town) of Lyons, and is not an identical political subdivision or district to or with said town of Lyons.

That on February 18, 1908, there was duly filed in the clerk's office in the village of Summit, a duly and properly verified petition duly signed by the required number of residents and legal voters of said village of Summit, requesting said clerk to cause to be submitted to the voters of the village of Summit in manner provided by law, at the next election, the proposition 'Shall this village become anti-saloon territory.'

That on March 23, A. D. 1908, a notice was duly given by said village of Summit, and by the duly authorized officers of said village, as provided by law, which said notice was duly posted, published and circulated in manner and form as provided by law, and that said notice provided and published that on Tuesday, April 21, A. D. 1908, there would be submitted to the voters in said village the question 'Shall this village become anti-saloon territory?' That pursuant to said notice an election was duly held in manner and form as provided by law, and the statute in such case made and provided, in said village on April 21, A. D. 1908, said election being one at which said question hereinabove referred to might be duly and legally submitted to the voters of said village, if it could at such time be submitted at all, and at said election said question was submitted to said voters, and at said election 105 voters in said village voted 'No' upon said proposition, and 12 voters in said village voted 'Yes' upon said question.

That all preliminary steps necessary or required by law to submit said question to the voters of said township (town) of Lyons, and to the voters of said Village of Summit, were duly, legally and lawfully had and taken, and the respective elections at which said

respective votes were cast in said township (town) and in said village were such elections provided by law for the submission of such questions respectively.

That pursuant to the result of said election, the village board of the village of Summit duly passed ordinances with reference to the issuing and granting of licenses to keep dram-shops in said village; that said ordinances were passed pursuant to and in conformity with the provisions of Chapter 24 of the Revised Statutes of Illinois, known and described as the Cities and Villages Act, and in pursuance and conformity with the provisions of Chapter 43 of the Revised Statutes of Illinois, known and described as the Dram-Shop Act. That pursuant to the provisions of said ordinances so passed by said village of Summit, said village did on the 1st day of July, A. D. 1908, issue to said defendant herein, a license to keep a dram-shop in said village of Summit in said County and State aforesaid, which said license did not, by its terms, expire until the 30th day of June, A. D. 1909, and that on said 31st day of October, A. D. 1908, said defendant was operating the said dram-shop hereinbefore referred to, in conformity with and under and in pursuance of said terms of said license as aforesaid.

It is the intention of the parties hereto in entering into this stipulation, to submit to the court for its consideration and adjudication, the question whether or not the township (town) of Lyons having voted to become anti-saloon territory on April 7, 1908, the smaller political subdivision or district which is not identical with the township (town) of Lyons, although included within the boundaries of said township (town) could submit the question which it did submit to its voters on said April 21, 1908.''

By section 1 of the act referred to, anti-saloon territory is defined to mean all territory within the limits of any town, precinct, city or village in this state in which, through the action of the legal voters therein as provided by this act, the sale of intoxicating liquor, except as otherwise provided, is prohibited.

Sections 8, 9 and 10 of the act are as follows:

"Section 8. All the territory within any political subdivision which has become Anti-Saloon Territory shall continue to be Anti-Saloon Territory throughout its entire extent, notwithstanding any change which may be made in the limits of any such political subdivision, until the legal voters thereof have voted, according to the provisions of this act, to discontinue such Anti-Saloon Territory and the following section shall be construed in harmony herewith. In all Anti-Saloon Territory, during the time that it continues to be Anti-Saloon Territory, the operation of all ordinances providing for the restriction, regulation or prohibition of the sale of intoxicating liquor or for the issuing of dram-shop licenses within any portion or the whole of such territory, so far as inconsistent with its status as Anti-Saloon Territory, shall be suspended.

Section 9. Upon the filing in the office of the clerk, at least sixty days before an election in any political subdivision, of a petition directed to such clerk, containing the signatures of legal voters of an Anti-Saloon Territory or district, in number not less than one-fourth of the total vote cast therein at the last election, to submit to the voters thereof the proposition "Shall this . . . (political subdivision or district) continue to be Anti-Saloon Territory?" (provided such petition corresponds in all other respects with the petition to this act before described) such proposition shall be submitted at such election to the voters of such political subdivision or district, and the provisions of sections one (1), four (4), five (5), six (6), and seven (7) of this act shall apply in all respects, so far as applicable, to the proposition "Shall this . . . (political subdivision or district) continue to be Anti-Saloon Territory?" to the submission of such proposition to such voters, to the petition therefor, to the recording of the vote thereon and to the proof and evidence of the petition and vote, except that in a district such proposition shall be submitted by separate ballot. If a majority of the legal voters voting upon such last mentioned proposition in any such political subdivision or dis-

trict vote "No," such political subdivision or district shall cease to be Anti-Saloon Territory, and all ordinances providing for the restriction, regulation or prohibition of the sale of intoxicating liquor or for the issuing of dram-shop licenses, the operation of which was in any wise suspended within such political subdivision or district by virtue of the vote therein to become Anti-Saloon Territory, and with all additions and amendments which in the meantime may have been made thereto, shall, if not in the meantime repealed, become and be in force within said political subdivision or district to the same extent, only, however, as the same would then be in force had such political subdivision or district never become Anti-Saloon Territory. The petition mentioned in this section shall be a public document and shall be subject to the inspection of the public.

10. A vote under the provisions of this act in and for any political subdivision upon the proposition 'Shall this . . . become Anti-Saloon Territory?' or in and for any political subdivision or district upon the proposition 'Shall this . . . (political subdivision or district) continue to be Anti-Saloon Territory?' shall be a bar to the submission to the voters thereof of either of such propositions as applied to that identical political subdivision or district only, until after the lapse of eighteen months."

It is contended by the plaintiff in error that because in the village of Summit, at an election held April 21, 1908, there was submitted to the voters the question, "Shall this Village become Anti-Saloon Territory?" and a large majority of the voters at such election voted "No" upon the proposition, that thereupon the village ceased to be "anti-saloon territory," notwithstanding the action of a majority of the voters of the town on April 7, 1908, in voting "Yes" upon the question "Shall this town become Anti-Saloon Territory?"

It is insisted that the act recognizes in its operation certain separate and distinct political entities, viz: the town, precinct, village, and city; that these throughout

the act are treated as political subdivisions which are
to determine, each for itself, the continuance or abate-
ment of the liquor traffic; that there is nothing in the
law, either expressly or impliedly, to prevent the cir-
culation of a petition for the submission of the ques-
tion in one of the smaller subdivisions, although at the
same time a petition may have been filed for submit-
ting the same question at an ensuing election, in a large
subdivision including within its boundaries the smaller
subdivision; that the only requisite for such submis-
sion is that the petition in either case shall comply
with Section 2 of the act; that Section 10 does not pro-
hibit the submission of the anti-saloon territory ques-
tion within eighteen months to any political subdivi-
sion other than the *identical* one *only* which has pre-
viously voted on the question.

In the case of Cole v. Commonwealth, 39 S. W. Rep.
1029, the Supreme Court of Kentucky had before it a
statute which provided that upon petition of a number
of voters in each precinct of the territory to be affected
equal to 25 per cent. of the votes at the last election in
each precinct, and, when for town or city elections, to
the number cast at the last city or town election, the
judge of the county court should direct an election to
be held in said county, city or town, district or precinct,
as the case may be, to determine whether spirituous
liquors should be sold therein.    It appears that on peti-
tion by the requisite number of voters of a county, and
at the same time on like petition by the requisite num-
ber of voters of a city therein, an election was held in
each of the precincts of the county, including the city,
and in each of the precincts of the city, resulting in a
vote against sales in the county, and for sales in the
city.    The court held that the result of the city elec-
tion was not controlled by that of the county election.

This case is cited to us by the plaintiff in error as
authority for the proposition for which he contends,
namely, that any portion of the township may deter-

mine for itself whether or not such portion shall be included in the so-called anti-saloon territory. The contention is that although the election of the village was held after that of the town, and although the election was not held under Section 9, *supra,* the village is set apart from the other portions of the township and is no longer anti-saloon territory. The opinion in the case heretofore referred to as having been decided by the Supreme Court of Kentucky, was delivered in 1897. In 1906, however, the Legislature of Kentucky passed what is known as the Cammack Act.

In May v. Ferguson, 122 S. W. Rep. 208, the Supreme Court of Kentucky held that under the Cammack Act the county is the absolute unit except in counties in which there are situated cities of the first, second, third or fourth class, and in counties all of the territory outside of the city limits is an absolute unit, and the city is made a separate unit. It was further held that this was a complete reversal of the order of things that had theretofore existed. In the same case it is also said:

"Hence it has been held that where territory is wet where prohibition has not theretofore been enforced, any subdivision of a county may vote upon the question of establishing prohibition therein, but no subdivision of a county other than cities of the first, second, third, or fourth class may take a vote upon the question at all when prohibition is already enforced within such territorial limit. In other words, where no prohibitory laws are in force in the county, any magisterial district, voting precinct, or town of any class may vote to establish prohibition within the limits of such magisterial district, voting precinct, or town; but where prohibition has been established in the entire county, a different rule obtains. A unit has been established, and a vote can never again be taken in any subdivision of that county other than in some one of the cities belonging to the excepted class, unless it is taken in the entire county. So that, where a precinct

or magisterial district has once been made dry by a vote of the county, it must forever remain dry, unless the bond is lifted by the people of the entire county. Eggen, etc. v. Offutt, etc., 128 Ky. 314, 108 S. W. 333, 32 Ky. Law Rep. 1350. It is true, in the case to which we have just referred, this identical question was not before the court, but just the converse of the conditions with which we are dealing was under consideration. There the county was wet, and the precinct had taken a vote upon the question as to whether or not prohibition should be enforced within its limits and had voted dry, and the court held that it might do so, but in the same opinion distinctly stated that, if the county in which this precinct was situated had theretofore voted dry, the election would have been invalid, for prohibition having been established in the county, the unit, the will of the people therein could not be overthrown by the voters of any part of that unit."

In Schwartz v. People, 46 Colo. 239, it was held:

"When once any subdivision becomes anti-saloon territory, the only way to restore it to its original status of license or saloon territory is to secure a favorable vote to that end in the identical territory."

If the election in the Village of Summit had occurred prior to that of the town, a different situation would be presented; but as the entire town voted to become anti-saloon territory prior to the election held in the village, we think, in order to give effect to Section 8 of the statute, it must be held that the decision so reached by the town established a situation which must continue to exist "throughout its entire extent" until another election is had in the town, on a petition based upon the provisions of Section 9, *supra*. Under Section 10 such an election could not take place until eighteen months after the vote was had creating the town anti-saloon territory.

We agree with the State's Attorney that under Section 10, when a vote has been taken upon the proposition to become, or the proposition to continue, anti-

saloon territory, the result of the vote upon either proposition must stand for eighteen months, and a resubmission may be had only by the identical political subdivision or district.

The proposition submitted to the voters of the village was not "Shall this village continue to be anti-saloon territory?" but it was "Shall this village become anti-saloon territory?" By the vote of the town a few weeks prior thereto the village, as well as the rest of the town, had become anti-saloon territory, and its status in this regard could not be changed for eighteen months, and then only by a vote of the entire town.

For the reasons stated, the judgment of conviction of the plaintiff in error is affirmed.

*Affirmed.*